# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ROBERT CARRIGAN,<br>　　　　　　Appellant, | DOCKET NUMBER<br>AT-0752-20-0192-I-1 |
| 　　v. | |
| DEPARTMENT OF DEFENSE,<br>　　　　　　Agency. | DATE: July 30, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Jennifer Duke Isaacs</u>, Esquire, Atlanta, Georgia, for the appellant..

<u>David R. Daniels</u>, Esquire, and <u>Kelly Wilkinson</u>, Alexandria, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. For the reasons discussed below, we GRANT the appellant's petition for review and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BACKGROUND**

The appellant was previously employed as a Supervisory Instructional Systems Specialist/Director of the Curriculum and Instructional Standards Office within the agency's Defense Equal Opportunity Management Institute (DEOMI).[2] Initial Appeal File (IAF), Tab 9 at 31. In that role, among other things, he was responsible for providing strategic direction and obtaining accreditation for DEOMI's academic programs. *Id.* at 35-39. By a letter dated February 25, 2019, the agency proposed to remove the appellant for failure to follow a directive (two specifications) and creating an apparent conflict of interest in the performance of his duties (one specification). *Id.* at 10-15.

The first specification of failure to follow a directive alleged that the appellant acted in a position of management or control of the external organization that served as the accrediting body for the agency's academic programs, the Council on Occupational Education (COE), by serving as a Commissioner and an Executive Committee member, despite being previously instructed to limit his outside role in COE to that of a Department of Defense (DoD) Liaison and an advisor of the agency's interests. *Id.* at 10. The second specification alleged that after the appellant was issued a memorandum that rescinded his appointment as a Liaison, instructed him to cease and desist from his relationship with COE, and ordered him to cease being listed on COE's website as a Commissioner, agency officials later discovered that the appellant's name was once again appearing on COE's website identifying him as a Commissioner, and the appellant continued to serve as a Commissioner and a member of the Commission's Executive Committee in violation of the memorandum's instructions. *Id.*

---

[2] The appellant's position description identifies his former position classification title as "Supervisory Instructional Systems Specialist," and his title as "Director," and both titles were used interchangeably in the documents included in the record below. *See* Initial Appeal File (IAF), Tab 9 at 31, 34. For the sake of simplicity, we will refer to the appellant's former title as "Director" throughout this decision.

The single specification of creating an apparent conflict of interest in the performance of his duties alleged that, by serving in the role of Commissioner with COE and by acting as a part of the recognized decision-making body of COE, the appellant placed himself in a position where he could be perceived as having influence to change COE's rules in order to promote the agency's interests, or of shaping DoD's programs to favor COE. *Id.* at 11. The agency alleged that serving in this dual capacity created an apparent conflict of interest and undermined the efficiency of the Federal service. *Id.* The appellant provided written materials and an oral response to the proposal. *Id.* at 19-23. After considering the appellant's responses, the deciding official issued a decision letter sustaining both charges and the removal penalty. *Id.* at 24-30.

The appellant subsequently filed a formal equal employment opportunity (EEO) complaint alleging that the agency discriminated against him on the basis of race (Caucasian), sex (male), and in retaliation for his prior EEO activity when it removed him from his position. IAF, Tab 1 at 16; Tab 14 at 24. After 120 days elapsed without the agency issuing a final agency decision on the appellant's EEO complaint, the appellant timely filed a Board appeal challenging his removal. IAF, Tab 1; *see* 5 C.F.R. § 1201.154(b)(2). The appellant also raised the following affirmative defenses: discrimination on the basis of his race and sex; retaliation for prior EEO activity; retaliation for protected whistleblowing activity; retaliation for exercising a complaint or grievance right; and harmful procedural error. IAF, Tab 1 at 25-27; Tab 13 at 4-9. After holding the appellant's requested hearing, *see* IAF, Tab 20, Hearing Compact Disc (HCD), the administrative judge issued an initial decision that sustained specification 1 of failure to follow a directive, but did not sustain specification 2, IAF, Tab 22, Initial Decision (ID) at 6-10. Having sustained one of the specifications, the administrative judge sustained the charge. ID at 10. The administrative judge also found that the agency met its burden of proving the single specification of creating an apparent conflict of interest and sustained the charge. ID at 11-12.

She further found that there was a nexus between the appellant's misconduct and the efficiency of the service and that the removal penalty was reasonable under the circumstances. ID at 12-13, 21-23. Finally, she concluded that the appellant failed to prove any of his affirmative defenses. ID at 13-21.

The appellant has filed a petition for review of the initial decision, to which the agency filed a response. Petition for Review (PFR) File, Tabs 1, 3. The appellant has not filed a reply.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant argues that the administrative judge abused her discretion by denying two of his requested witnesses and summarizes the testimony he believes the witnesses would have provided if they had the opportunity to testify. PFR File, Tab 1 at 4-6, 18-24. The appellant also argues that the administrative judge made erroneous factual findings and credibility-based determinations, and applied incorrect legal standards in reaching her conclusion that the agency met its burden of proving both charges. *Id.* at 4-7, 24-33. Additionally, the appellant appears to suggest that the administrative judge erred by rejecting his affirmative defense of harmful procedural error, and his claims that the agency removed him in retaliation for his prior EEO activity and because he filed a complaint with the agency's Office of the Inspector General (OIG). *Id.* at 6-7, 23-25.

<u>The administrative judge did not abuse her discretion by denying the appellant's proposed witnesses.</u>

In his prehearing submission, the appellant requested that one of the witnesses, his former third-level supervisor, testify regarding his knowledge of the appellant's role as DoD Liaison and of the process of removing the appellant. IAF, Tab 14 at 19-20. The appellant further requested that the other witness, the Executive Director of COE, be permitted to testify regarding the appellant's role as a Commissioner and Executive Committee Member at the COE. *Id*. In an

order summarizing the prehearing conference, the administrative judge denied both witnesses, concluding that their proposed testimony was either not relevant or duplicative of witnesses that were already approved. IAF, Tab 18 at 6. At the beginning of the hearing, the administrative judge provided the parties with the opportunity to object to any of her rulings in the prehearing conference order, and the appellant did not raise an objection at that time. HCD.

By failing to object to the administrative judge's ruling excluding his requested witnesses, when provided with the opportunity to do so, the appellant failed to preserve this issue for review. *See Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶¶ 8-10 (2010) (concluding that the appellant failed to preserve for review her argument that the administrative judge improperly denied her proposed witness when she failed to object to the administrative judge's ruling excluding her requested witnesses when given the opportunity to do so); *Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988) (concluding that the appellant's failure to timely object to rulings on witnesses precluded him from doing so on petition for review); *see also Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985) (noting that an administrative judge has wide discretion under 5 C.F.R. §§ 1201.41(b)(8), (10) to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious). Consequently, we conclude that the administrative judge did not abuse her discretion when she denied the two identified witnesses proposed by the appellant.[3]

The agency met its burden of proving failure to follow a directive.

To prove a charge of failure to follow a directive, an agency must establish that the employee: (1) was given a proper instruction, and (2) failed to follow the

___

[3] Additionally, although the administrative judge denied the appellant's request to have COE's Executive Director testify, she permitted testimony from the appellant at the hearing—over the agency's objection—concerning the contents of a May 31, 2019 letter that included much of the information to which the appellant argues the Executive Director would have testified. HCD (testimony of the appellant); *see* PFR File, Tab 1 at 18-24, 27, 30; IAF, Tab 14 at 49-52.

instruction, without regard to whether the failure was intentional or unintentional. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 5 (2014). The first specification of this charge stated that, in the memorandum appointing him to the position of DoD Liaison to the COE, the appellant was warned that his role was limited to that of serving as a DoD Liaison and an advisor of DoD's interestsand that he was prohibited from being involved in matters of management or control of the COE. IAF, Tab 9 at 10; *see id.* at 53-54.

Despite this warning, in March 2018, COE's Executive Director sent the deciding official a letter thanking her for the appellant's contributions, in which the Executive Director identified that the appellant was serving as a Commissioner and an Executive Committee member of COE in violation of his appointment letter. IAF, Tab 9 at 10; *see id.* at 55-56. The second specification alleged that, after the appellant's appointment as a Liaison was rescinded and he was instructed to cease and desist from his relationship with COE and cease being listed on COE's website as a Commissioner, agency officials discovered that the appellant's name was replaced on COE's website identifying him as a Commissioner after it had previously been removed, and the appellant continued to serve as a Commissioner and a member of the Commission's Executive Committee in violation of the memorandum's instructions. IAF, Tab 9 at 10.

On review, the appellant argues that he was not serving in a position of management or control over the COE in his role as a Commissioner and member of the Commission's Executive Committee, and so the administrative judge erred by concluding that the agency proved the first specification of the charge. PFR File, Tab 1 at 5-6, 27-29. Specifically, he restates his argument that, in those roles, he did not participate in the "internal, day-to-day management" or control of the operations of COE, and instead only served in an advisory capacity and had no role in the management or control over the organization. *Id.* at 5-6, 27-29. He also challenges the administrative judge's credibility findings, arguing that she improperly declined to credit his testimony that he believed he was permitted to

serve as a Commissioner, and improperly credited testimony from the agency's ethic's expert concluding that "management or control" could include executive oversight functions of COE. *Id.* at 24-25, 27-32.

As the administrative judge noted in the initial decision, the letter appointing the appellant to the DoD Liaison position specifically informed him that all of COE's external references to the appellant had to clearly identify him as a "DoD Liaison" and not as an officer of the organization, and that he could not be involved in matters of management or control of the COE. IAF, Tab 9 at 53-54; *see* ID at 3-4, 7-8. Additionally, in a series of emails exchanged between the appellant and the agency's ethics attorney in August 2016, prior to the appointment, the appellant raised the prospect of becoming a "Commissioner" with COE. The ethics attorney warned him that an actual conflict of interest could arise if the appellant served on the council in any matter that affected DEOMI's accreditation and offered as an alternative to the appellant's request to serve as a Commissioner that he be appointed as a DoD Liaison, which was permitted by the agency's Joint Ethics Regulations. IAF, Tab 9 at 49-50.

In concluding that the appellant failed to follow this directive, the administrative judge noted the appellant's own acknowledgment that he was serving as a COE Commissioner and Executive Committee Member, that it was undisputed that the COE's website had identified the appellant as a member of the COE Commission and an Executive Committee Member, and that the COE President referred to the Commission as the "recognized decision-making body" of the organization. HCD (testimony of the appellant); *Id.* at 55-56, 60-61, 72-74; *see* ID at 7-8. Consequently, the administrative judge determined that, in order to prove this specification, the agency was not required to prove that the appellant actually exercised management or control over the COE, and instead only had to show that the appellant violated the agency's directive limiting his appointment to the position of DoD Liaison when he exceeded the authority

outlined in the directive and served in the role of COE Commissioner and Executive Committee member. ID at 8-9.

We agree. The Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency, and the Board will not substitute what it considers to be a more adequate or proper basis. *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989). As outlined in the proposal, the letter appointing the appellant to the position of DoD Liaison clearly limited his appointment to that specific role, and the letter was issued in direct response to the appellant's request to be appointed to COE as a Commissioner. IAF, Tab 9 at 10, 48-54. The agency's ethics expert testified at length about the importance of limiting the appellant's participation to the parameters outlined in the letter and about the importance of the DoD Liaison designation, noting that the Liaison position contemplated a "lesser" form of participation that was allowable under the agency's Joint Ethics Regulations (JER), while participation in the Commissioner and Executive Committee member positions the appellant occupied with COE was not permitted under the JER, based on his understanding of the duties of those positions. HCD (testimony of agency's ethics expert); IAF, Tab 9 at 122-38. Although the specification discusses the appellant's participation in duties exercising management or control over COE, the directive the appellant was charged with violating made clear that he was only permitted to serve as a DoD Liaison with COE and that any external references by COE to the appellant had to make that relationship clear. IAF, Tab 9 at 53-54. There is no dispute that the appellant served as a Commissioner and as an Executive Committee member, so we agree with the administrative judge's conclusion that the agency proved that the appellant failed to follow the October 12, 2016 directive, irrespective of whether he exercised any management or control over the COE. *See* ID at 8-9.

Regarding the appellant's challenges to the administrative judge's credibility determinations, the Board must give deference to an administrative

judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). In concluding that the appellant violated the agency's directive by serving as a Commissioner and Executive Committee member with COE, the administrative judge relied on the entire evidentiary record, to include credibility determinations based on the hearing testimony from the appellant and agency witnesses. ID at 6-9; *Haebe*, 288 F.3d at 1301. On review, the appellant merely states his general disagreement with the administrative judge's credibility findings, and has not presented sufficiently sound reasons to disturb the administrative judge's credibility determinations.[4] *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions). Accordingly, the administrative judge correctly found that the agency proved the first specification of the failure to follow a directive charge.[5]

---

[4] On review, the appellant highlights one piece of testimony cited by the administrative judge to which he takes particular objection, concerning the deciding official's assertion that DEOMI paid COE $40,000 per year to accredit DEOMI's curriculum, calling the assertion slanderous, misleading, and a lie. PFR File, Tab 1 at 18-19; *see* ID at 2 n.4 (citing HCD (testimony of the deciding official)). However, the appellant mischaracterizes the witness's testimony. In her testimony, the witness asserted that the last figure she "recalled" DEOMI paid to COE for accreditation was $40,000, but she also acknowledged that the figure varied over time and she didn't know the exact amount. HCD (testimony of the deciding official). This is consistent with the language in the initial decision identifying that DEOMI paid COE "approximately $40,000 per year." ID at 2 n.4.

[5] Because we agree with the administrative judge's conclusion that the agency met its burden of proving this specification by proving that the appellant failed to follow the directive instructing him to serve as a DoD Liaison to COE, when he exceeded the instructions in that directive and served as a Commissioner and member of the Executive Committee, we make no findings concerning her alternative conclusion that the appellant was acting in a position of management or control by serving as a COE Commissioner and Executive Committee member. *See* ID at 8-9.

The appellant also makes a number of arguments on review regarding the second specification of the failure to follow a directive charge, which alleged that he continued to serve as a Commissioner and Executive Committee member and allowed his name to reappear on COE's website in direct violation of the agency's order instructing him to cease and desist from his relationship with COE and to cease being listed on COE's website. However, the administrative judge did not sustain this specification, concluding that the agency failed to meet its burden of proving the specification. ID at 11-12. We agree with the administrative judge's conclusion, and therefore find it unnecessary to address these arguments further. Finally, because the agency proved one of the two specifications of the charge, the administrative judge correctly concluded that the agency proved the charge. ID at 10; *see Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that when more than one specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

The agency proved the charge of creating an apparent conflict of interest.

The single specification of the second charge alleged that by serving as a Commissioner and as a part of the recognized decision-making body of COE, the appellant placed himself in a position where he could be perceived as having influence to change COE's rules in order to promote the agency's interests or of shaping DoD's programs to favor COE, thereby creating an apparent conflict of interest and undermining the efficiency of the Federal service. IAF, Tab 9 at 11. The administrative judge sustained the single specification of the charge. ID at 11-12. In sustaining the charge, the administrative judge cited the fact that as a Commissioner with COE, the appellant was responsible for approving the accreditation of other institutions, and in his capacity as Director of DEOMI's Curriculum and Instructional Standards Office, he was responsible for seeking accreditation of DEOMI's programs from COE, thereby raising significant ethical

questions and placing DEOMI in a position where it could potentially benefit from rule changes the appellant might oversee as a Commissioner. ID at 11.

The administrative judge also credited the testimony by the agency's ethics expert, who testified that the appellant holding the position of Commissioner created a potential conflict of interest. ID at 12; *see* HCD (testimony of the agency's ethics expert). She cited as persuasive the ethics expert's testimony that "management and control" can refer to the day-to-day operations or oversight of an organization, and that based on his review of materials on COE's website regarding the responsibilities of its Commissioners and his knowledge and experience as the manager of the agency's ethics program, he believed that the appellant serving in that role created an appearance of a conflict of interest. ID at 12; *see* HCD (testimony of the agency's ethics expert).

On review, the appellant challenges the testimony provided by the agency's ethics official concerning the apparent conflict of interest, restating his argument that he did not exercise any management or control over the COE while serving as a Commissioner. PFR File, Tab 1 at 21-22, 25-32. Specifically, the appellant argues that he only served in an advisory capacity in his role with COE and that he followed all applicable laws and agency directives during the course of his appointment. *Id.* at 25. He also states that the only reason he was given the title of "Commissioner" was so that he could partake in COE's standards development and conformity assessment and accreditation activities, and because COE did not have a "Liaison" position title. *Id.* at 25, 30. The appellant acknowledges that as a Commissioner, he participated in the development of Federal accreditation standards, but argues that he only participated in any decision-making and voting activities as a part of his role as a DoD Liaison. *Id.* at 30-31. He also identifies a number of other accreditation boards that other Federal employees are permitted to serve on, and asserts that he is being targeted and treated differently than those employees. *Id.* at 29. Additionally, the appellant cites a letter from COE's Executive Director noting that even though Commissioners served on the

"recognized decision-making body" of COE, the day-to-day-business and management operations of COE rested with the Executive Director/President and his staff. *Id.* at 27; *see* IAF, Tab 14 at 49. Finally, the appellant cites a number of laws, regulations, and other provisions that he believes support his position that he was permitted to serve as a Commissioner with COE and that he was not serving in a position of management or control over the COE. *See* PFR File, Tab 1 at 5-6, 10, 13, 21, 26-31 (citing the following: Public Law No. 104-113; Public Law No. 108-237; 18 U.S.C. § 208; 10 U.S.C. §§ 1033(b), 1589(b); 15 C.F.R. part 287; 5 C.F.R. § 2634.903(c); Office of Management and Budget Circular A-119; DoD's Joint Ethics Regulation (JER) (DoD 5500.07-R); DoD Manual 4120.24-M).

In essence, the appellant is arguing that, contrary to the testimony provided by the agency's ethics expert, in serving as a Commissioner with COE he did not have or exercise any decision-making authority over the COE's functions, so his role as a Commissioner did not present any conflict with his role as Director of DEOMI's Curriculum and Instructional Standards Office. However, the appellant misunderstands the nature of the agency's charge and the requirements for proving a charge of creating an apparent conflict of interest.

To prove the existence of a conflict of interest, an agency must establish that its employee was acting in two separate capacities, at least one of which involved his official duties, and that the nature of his interests or duties in one capacity had a "direct and predictable effect" on his interests or duties in his other capacity. *Ryan v. Department of Homeland Security*, 123 M.S.P.R. 202, ¶ 12 (2016); *Fontes v. Department of Transportation*, 51 M.S.P.R. 655, 664 (1991). By contrast, to prove the existence of an appearance of a conflict of interest, an agency must only show that an employee's interests or duties in one capacity would "reasonably create an appearance" of having an effect on his interests or duties in the other capacity. *Ryan*, 123 M.S.P.R. 202, ¶ 12; *Fontes*, 51 M.S.P.R. at 664. Consequently, an agency can prove a charge of creating an

apparent conflict of interest, even if it falls short of proving an actual conflict of interest. *See Ryan*, 123 M.S.P.R. 202, ¶ 11. The Board has also held that creating the appearance of an ethical violation (such as a conflict of interest) requires some action by the employee. *Id.*, ¶ 17.

Although the appellant largely challenges the agency ethics official's testimony, that "management and control" as defined in the relevant ethics regulations could refer to functions the appellant performed as a Commissioner and Executive Committee member on the COE, and the administrative judge's reliance on that testimony, even if the appellant is correct in his interpretation of the relevant regulations, it is immaterial because the agency did not charge him with violating any of those ethics regulations. Instead, the agency charged the appellant with creating an "appearance" of a conflict of interest. We agree with the administrative judge's conclusion that, based on the information available to the agency at the time it removed the appellant,, the agency could have reasonably concluded that the appellant's participation as a Commissioner "reasonably create[d] an appearance" of having an effect on the appellant's interests or duties as a Director at DEOMI, irrespective of whether the appellant's actions were actually improper and violated the statutes, rules, or regulations the appellant identifies. IAF, Tab 9 at 60-61, 72-74; *see* ID at 11-12; *Fontes*, 51 M.S.P.R. at 664; *Ryan*, 123 M.S.P.R. 202, ¶ 11.

Further, the appellant was specifically warned by the agency in advance of his appointment as DoD Liaison about what types of actions (including being referred to as anything other than "DoD Liaison" on any of COE's external media, and serving in anything other than an advisory role) could create an appearance of a conflict of interest. IAF, Tab 9 at 53-54; *cf. Ryan*, 123 M.S.P.R. 202, ¶ 13 ("Fundamental fairness precludes disciplining an employee for creating the appearance of an ethical violation unless he should have known it would appear improper to a reasonable observer under the circumstances."). Despite these warnings, the appellant knowingly took on the role and duties of a

Commissioner and Executive Committee member, thereby creating the appearance of a conflict of interest. *See Ryan*, 123 M.S.P.R. 202, ¶ 17. The mere fact that agency officials mentioned the JER in the guidance provided to the appellant did not elevate proving a violation of the regulation to an element of the charge. IAF, Tab 9 at 48-54. Accordingly, we agree with the administrative judge that the agency met its burden of proving that, by serving as a member of COE's Commission—the recognized decision-making body of COE, and the body that provided accreditation to DEOMI's programs—the appellant created the appearance of a conflict of interest with his role as DOEMI's Director of the Curriculum and Instructional Standards Office. ID at 11-12.

The administrative judge correctly concluded that the appellant failed to prove some of his affirmative defenses.

In the initial decision, the administrative judge concluded that the appellant failed to establish his affirmative defenses of harmful procedural error, retaliation for exercising a complaint or grievance right, discrimination on the basis of his race and sex, retaliation for prior EEO activity, and retaliation for protected whistleblowing. ID at 13-21. On review, the appellant challenges the administrative judge's findings concerning his harmful error, EEO retaliation, and whistleblower retaliation affirmative defenses. PFR File, Tab 1 at 6-7, 23-25. However, he does not appear to challenge the administrative judge's findings concerning his affirmative defenses of discrimination on the basis of race and sex, and retaliation for exercising a complaint or grievance right, so we have not addressed those claims on review.

*The appellant did not establish that the agency committed harmful procedural error.*

For the first time on review, the appellant raises what he describes as a "due process" violation based on the agency ethics officer's "dereliction of duty" in his failure to alert the appellant of the possible conflict of interest and provide him a period of time to remedy the issue, as required by 45 C.F.R. § 73.735-903.

*See* PFR File, Tab 1 at 7, 27, 32. As an initial matter, the appellant did not raise this argument below and thus we need not consider it. *See Clay*, 123 M.S.P.R. 245, ¶ 6; 5 C.F.R. § 1201.115(d). Additionally, although the appellant characterizes this claim as a due process violation, he is essentially alleging that the agency engaged in harmful procedural error by failing to follow the requirements in the cited regulation concerning remedying a potential conflict of interest. *See Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 9 (2015) (noting that a harmful error is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error); 5 C.F.R. § 1201.4(r).

Regardless, the provision cited by the appellant, 45 C.F.R. § 73.735-903, is only applicable to employees of the Department of Health and Human Services. *See* 45 C.F.R. § 73.735-101 ("In accord with these principles, the regulations in this part are issued to inform [Health and Human Services] employees and special Government employees what standards of conduct are expected of them in performing their duties and what activities are permitted or prohibited both while they are employed and after their employment with the Department is ended."); 45 C.F.R. § 73.735-102 (defining "Department" as "the Department of Health and Human Services," and a "Special Government employee" as "an individual who is retained, designated, appointed, or employed to perform temporary duties either on a full-time or intermittent basis, with or without compensation, for not to exceed 130 days during any period of 365 consecutive days"); 45 C.F.R. § 73.735-103(a) ("The regulations in this part apply to all employees of the Department [of Health and Human Services] and to special Government employees to the extent indicated in Subparts J and K."). Thus, DOD agency officials were not obligated to follow the procedures outlined in that regulation and did not commit harmful error by failing to do so.

The appellant also challenges the administrative judge's finding that he failed to prove his claim that the agency committed harmful error by having the Deputy Commandant—the appellant's second-line supervisor—serve as the proposing official instead of his first-line supervisor. PFR File, Tab 1 at 6-7, 23-24; *see* ID at 13-14. Specifically, the appellant restates his argument that the Deputy Commandant did not have supervisory authority over him, and instead the removal action should have been proposed by the Commandant (who served as the deciding official in this case), and the Commandant's supervisor, the Director of the Diversity Management Operations Center (DMOC), should have served as the deciding official. PFR File, Tab 1 at 23. To support his argument, the appellant cites 5 U.S.C. § 7103, which defines "supervisor" as follows: "an individual employed by an agency having authority in the interest of the agency to . . . remove employees . . . or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment, except that, with respect to any unit which includes firefighters or nurses, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority." *Id.* at 23-24 (quoting 5 U.S.C. § 7103(a)(10)). Referring to testimony from the Deputy Commandant acknowledging that she "occasionally" gave direction to the appellant, the appellant suggests that the Deputy Commandant did not meet this definition of "supervisor" because she did not devote a preponderance of her employment time exercising authority over him. *Id.* at 24.

The appellant misinterprets the cited provision. The clause of section 7103(a)(10) defining a "supervisor" as "only those individuals who devote a preponderance of their employment to exercising [the authority to remove employees]" is limited by the language immediately before it, making clear that this clause is only applicable to "*any unit which includes firefighters or nurses.*" *See* 5 U.S.C. § 7103(a)(10) (emphasis added). Because there is no evidence

indicating that the appellant's work unit includes firefighters or nurses, the language defining "supervisor" based on the amount of time spent devoted to supervisory functions is inapplicable here, and instead, the general provision more broadly defining a "supervisor" as *any* agency official with the authority to remove employees or recommend removal is operative. *See id.* Accordingly, we find no error in the administrative judge's finding that the appellant failed to prove his harmful error affirmative defense claim.

> *We clarify the administrative judge's findings concerning the appellant's affirmative defense of discrimination on the basis of race and sex but still agree that he failed to prove this claim.*

In the initial decision, the administrative judge concluded that the appellant failed to establish his affirmative defense of discrimination on the basis of his race or his sex. ID at 14-17. In making this finding, the administrative judge cited the evidentiary standards set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 42-43, 51 (2015). ID at 13-14. Following the issuance of the initial decision in this case, the Board issued *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, which overruled parts of *Savage* and clarified the proper analytical framework to be applied to affirmative defenses of Title VII discrimination and retaliation, *id.*, ¶¶ 20-25, 30. Nonetheless, the outcome of this appeal under *Pridgen* would be the same as that arrived at by the administrative judge. Notably, under *Pridgen*, to obtain any relief, the appellant must still show, at a minimum, that the prohibited consideration of race was a motivating factor in the agency's decision to remove him, *Pridgen*, 2022 MSPB 31, ¶¶ 20-22, and we agree with the administrative judge that the appellant failed to make this showing.[6]

---

[6] Because the appellant failed to prove that discrimination on the basis of race or sex was a motivating factor, we need not reach whether it was a "but-for" cause of his removal. *See Pridgen*, 2022 MSPB 31, ¶ 22.

<u>We remand the appeal for further adjudication of some of the appellant's affirmative defenses.</u>

*The administrative judge must make new findings regarding the appellant's claim of retaliation for protected EEO activity.*

In his May 2018 EEO complaint, the appellant alleged that the deciding official slowed down the reclassification of his position, criticized and harassed him, treated him differently, and created a hostile work environment due to his race and sex. IAF, Tab 13 at 27-30. In analyzing this affirmative defense claim, the administrative judge acknowledged the stipulation from the parties that the deciding official was aware of the appellant's prior EEO complaint. ID at 17; *see* IAF, Tab 13 at 24-20; Tab 14 at 16; Tab 16 at 6; HCD (discussion of agreed-upon stipulations). Consequently, she assumed, without deciding, that the appellant proved that retaliation for his prior EEO activity was a motivating factor in the agency's removal decision, but nevertheless concluded that given the seriousness of the appellant's misconduct, the agency demonstrated that it still would have removed the appellant "regardless of his EEO activity." ID at 17.

As noted above, here, the administrative judge did not make a specific finding concerning whether the appellant established that his EEO activity was a motivating factor in the removal decision, instead citing the parties' stipulation to the fact that the deciding official was aware of the appellant's May 2018 EEO activity at the time she issued the decision removing the appellant on March 26, 2019, and assuming without deciding that the appellant met his burden of proving that his EEO activity was a motivating factor in the agency's removal decision. ID at 17. By citing the deciding official's stipulation that she was aware of the appellant's protected EEO activity, the administrative judge may have been presuming that the deciding official's awareness of the EEO activity, alone, was sufficient to establish that the EEO activity was a motivating factor in the removal decision, but she failed to make any explicit finding to this effect. *See* ID at 17.

Although the deciding official's acknowledgment that she was aware of the appellant's EEO complaint does constitute some evidence demonstrating potential retaliatory intent, additional considerations, including the deciding official's denial of any retaliatory purpose, the temporal proximity between the removal action and the EEO activity, the potential motive to retaliate by any other agency officials, and the administrative judge's credibility assessments, are also relevant. *See* HCD (testimony of the deciding official denying that the appellant's EEO activity played any role in her removal decision); *Pridgen*, 2022 MSPB 31, ¶ 31 (identifying as relevant in analyzing the appellant's EEO retaliation claim, among other things, the appellant's first level supervisor's denial of any retaliatory intent and the administrative judge's implicit demeanor-based credibility findings regarding the appellant's second level supervisor's lack of motive to retaliate). Accordingly, we remand the appeal and direct the administrative judge to make a specific finding, consistent with the standard identified in *Pridgen*, addressing whether the appellant established that his EEO complaint was a motivating factor in the agency's decision to remove him.

> *The administrative judge must make new findings addressing whether the agency retaliated against the appellant based on his protected activity under 5 U.S.C. § 2302(b)(9)(C).*

The appellant also alleged below that the agency's decision to remove him was in reprisal for his whistleblowing activity. IAF, Tab 13 at 6-8. Specifically, the appellant described his whistleblowing disclosure as his complaint to the agency's OIG on or about May 31, 2017, alleging, among other things, that his supervisors and the senior DEOMI leadership team were bullying him, abusing their power, micromanaging, and creating a hostile and toxic work environment, leading to degraded morale and a loss of faith in leadership. *Id.* at 16-21; *see id.* at 6-8. On petition for review, the appellant restates his argument that the agency removed him in retaliation for his filing of an OIG complaint. PFR File, Tab 1 at 25.

In the initial decision, the administrative judge concluded that the appellant failed to establish that he made a protected disclosure based on his OIG complaint. ID at 19-21; IAF Tab 13 at 16-21. Although we agree that the appellant failed to meet his burden of establishing that his OIG complaint constituted a protected disclosure under 5 U.S.C. § 2302(b)(8), we now turn to consider whether he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D) when he filed his OIG complaint. *See Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. Under the broadly worded provision of 5 U.S.C. § 2302(b)(9)(C), disclosing information to an agency's OIG is protected, regardless of the content of the complaint, as long as such disclosures are made "in accordance with applicable provisions of law." *Id.* The appellant alleged that he filed his May 31, 2017 complaint with the agency's Inspector General's office through the agency's ordinary process for filing such complaints, and the agency has not disputed that assertion. IAF, Tab 13 at 6-7, 16-21. Accordingly, we find that the appellant's May 31, 2017 submission to OIG meets that broad standard. We therefore find that the appellant's disclosure to OIG constitutes protected activity under section 2302(b)(9)(C).

Because the appellant established that he engaged in protected activity under section 2302(b)(9)(C), he must next establish that the protected activity was a contributing factor in his removal. *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 13 (2015). To prove that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003).

One way to establish contributing factor is the knowledge/timing test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd per curiam*, 353 F. App'x 435 (Fed. Cir. 2009). This test allows an employee to demonstrate that his prior protected activity was a contributing factor in the

challenged action by showing that the official taking the personnel action knew of the protected activity and took the personnel action within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the action. *Id.* An appellant may also satisfy the knowledge prong of the knowledge/timing test by proving that the official taking the action had constructive knowledge of the disclosure, even if he did not have actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.* The Board has held that, if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, the administrative judge shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether they had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012).

Here, the timing element of the knowledge/timing test is satisfied. Specifically, the agency removed the appellant just shy of 22 months after he filed his OIG complaint. IAF, Tab 9 at 24; Tab 13 at 6, 16-21; *see Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (noting that the Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosure satisfies the contributing factor knowledge/timing test). Regarding the knowledge prong of the test, because the administrative judge failed to identify that the appellant's OIG complaint was a protected activity, she did not make a finding as to whether the deciding official was aware of his complaint. ID at 19-21. At the hearing, the deciding official testified that she was not aware of the fact that the appellant filed an OIG complaint at the time she issued the removal decision, but that she later became aware of the OIG

complaint at some point after the appellant was removed. HCD (testimony of the deciding official).

Nevertheless, because the administrative judge did not evaluate the contributing factor criterion, she did not make any other findings addressing whether the deciding official may have been influenced by someone else with knowledge of the appellant's protected activity, i.e., whether she had constructive knowledge of his complaint. In his response to the administrative judge's affirmative defense order, the appellant appears to allege that in August 2017, another employee informed the appellant that he had spoken with the appellant's third-line supervisor (the deciding official's first-line supervisor) about the appellant's OIG complaint. IAF Tab 13 at 7. The appellant proposed that his third-line supervisor testify at the hearing regarding his "knowledge of and involvement in the removal process for [a]ppellant," but the request was denied on the grounds that the testimony was not relevant or was duplicative. IAF, Tab 14 at 19; HCD. Consequently, based on the existing record, there is insufficient information to determine whether the deciding official may have been influenced by someone else with knowledge of the appellant's protected activity, and we must remand the appeal for the administrative judge to further develop the record concerning whether the deciding official had constructive knowledge of the appellant's OIG complaint.[7]

If, on remand, the administrative judge determines that the appellant established his prima facie case of whistleblowing, she shall then consider whether the agency met its burden of proving by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's whistleblowing, consistent with the factors identified in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999). *See id.* at 1323 (concluding that, in determining whether an agency has met its burden, the Board

---

[7] If the administrative judge determines that the appellant did meet the knowledge timing test, then the administrative judge shall address the alternative to the knowledge/ timing test set forth in *Dorney*, 117 M.S.P.R. 480, ¶ 15.

will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.) We make no findings here as to whether the appellant can prove his prima facie case. We also do not determine whether, if he does, the agency can meet its burden. Those decisions can only be made in the first instance by the administrative judge after allowing the parties to supplement the record and after making new findings regarding this affirmative defense.[8]

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.

---

[8] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.